Donahue, J.,
dissenting. In the case of Coppage v. State of Kansas, 236 U. S., 1, decided January 25, 1915, by the supreme court of the United States, Mr. Justice Pitney, in writing the opinion of the majority of the court, specifically declares it is not dealing with the question of coercion. The language of the opinion in that respect is as follows:
“To avoid possible misunderstanding, we should here emphasize, what has been said before, that so far as its title or enacting clause expresses a purpose to deal with coercion, compulsion, duress, or other undue influence, we have no present concern with it, because nothing of that sort is involved in this case. As has been many times stated, this court deals not with moot cases or abstract questions, but with the concrete case before it. * * * We do not mean to say, therefore, that a state ma.y not properly exert its police power to prevent coercion upon the part of the employers towards employes, or vice versa.”
The.opinion then at some length explains why the acts charged against Coppage do not amount to coercion, and in that connection uses this language:
“It is equally clear, we think, that to punish an employer or his agent for simply proposing certain terms of employment, under circumstances devoid of coercion, duress, or undue influence, has *153 no reasonable relation to a declared purpose of repressing coercion, duress and undue influence.”
The affidavit in the case at bar charges the defendant with coercion as defined by Section 12943, General Code; that statute provides, among other things, that “Whoever * * * coerces or attempts to coerce employes by discharging or threatening to discharge them from their employ * * * because of their connection with such [lawful] labor organization, shall be fined,” etc.
In this habeas corpus proceeding the only question presented by the record is whether the petitioner is charged with an offense under a constitutional statute of this state. No presumption obtains that the evidence proposed to be offered by the state will not sustain the charges made in the affidavit. It is declared in the case of Coppage v. State of Kansas, supra, that the state may “properly exert its police power to prevent coercion upon the part of the employers towards employes or vice versa.” That is exactly what the general assembly of this state has undertaken to do in Section 12943, General Code.
That the legislative authority of a state in the exercise of its police power may declare what acts will amount to coercion, provided it does not interfere with the liberty of the citizen guaranteed by the federal constitution, is beyond dispute.
It is said that this statute offends against the provisions of the 14th Amendment to the Constitution. On the contrary, it is in furtherance of the intent and purpose of that amendment; it seeks to protect the liberty of contract, not to restrict it. *154 It does not prevent, or seek to prevent, the employer of labor from employing or discharging whom he will. That is his absolute right, and he must be protected in that right. On the other hand, the employe is entitled to the same protection, and in order to secure employment he should not be required to surrender any of his privileges or rights as an American citizen, and this law must be tested by its application to the rights of citizens, because the 14th Amendment to the Constitution provides that no state shall “deny to any person within its jurisdiction the equal protection of the laws.”
The contract of employment involves only the meeting of the minds of employer and employe as to the nature of the services to be performed and the wages to be paid therefor. The employer has neither a natural nor a constitutional right to demand that, as a condition of employment or retention in his employment, a citizen of this state shall vote a particular ticket, affiliate or refuse to affiliate with any particular society, or withdraw from any lawful organization of which he is a member. These matters may affect the employer’s mind and prevent or induce him to employ or discharge. The law does not attempt to control his mental attitude towards organized labor, but its sole purpose is to prevent him from coercing an employe, or one who seeks employment, by requiring him to surrender his personal rights and privileges as a citizen of the United States, before he may hope to secure or retain his employment.
It is said that such a demand upon an employe works no hardship, that he is not compelled to *155 accept the terms offered by his employer, but is at liberty to do as he pleases in reference thereto. This argument overlooks the fact that men may be compelled by their necessities, as well as by physical force, to surrender their natural and constitutional rights of personal liberty. It were a useless thing for the constitution of the United States, or the constitution of the state of Ohio, to guarantee personal liberty if the government is powerless to prevent a deprivation of that liberty, even though a citizen should regard it so lightly as to make it a subject of barter and sale.
Such a contract, if made, could not be enforced, nor damages awarded for a breach thereof. It is not only against' public policy, but is directly opposed to the fundamental principles underlying the foundation of our governmental structure, particularly in the respect that there are certain absolute rights of the individual that cannot be alienated, and personal liberty is one of these rights. It is so thoroughly un-American that the only surprise is that it is seriously contended that a law intended to prevent the alienation or deprivation of the liberty of the citizen by coercion or duress is unconstitutional.
Whether labor unions be useful or hurtful to the industrial prosperity of a state is not a question for the court in this case. If it is a lawful organization, then it fills the full measure of the statute.
The state is concerned in the full and free exercise of the rights of citizenship. It is concerned in maintaining the liberty of the individual citizen, *156 and its vigilance should be exerted to prevent any infringement upon or restriction thereof, otherwise we shall soon cease to be a nation of freemen.
Regardless, however, of the protection of individual liberty, it is a wise public policy to prevent, as far as possible, the imposition of impossible or impracticable burdens in the making of contracts for labor, either on the part of the employer or the employe. Idleness is not only an economic loss, but a menace to the peace and perpetuity of the state. The evident fact that a large number of men and women prefer to remain idle rather than accept employment burdened with such conditions, is sufficient reason for the state to invoke its police power for its own peace, prosperity and self-preservation. There are no other transactions in the affairs of men and women where the liberty of contract should receive more zealous protection than in contracts for labor, and if these contracts are to be subjected to burdens entirely foreign to the purpose of the contract, then we are inviting idleness instead of encouraging industry.
Aside from these considerations, however, the coercion intended to be prevented by this statute is in the nature of bribery. It is offering to a man, whose necessities may be compelling, work and wages if he will surrender at least a portion of his liberty, and idleness and want if he will not. If this can lawfully be done in any one particular it can be done in all matters pertaining to personal rights, and the result must necessarily be disastrous to our standard of citizenship.
The argument that this statute offends against *157 the Fifth Amendment to the Constitution of the United States, which provides that no person shall “be deprived of life, liberty, or property, without due process of law,” proceeds upon the theory that property is acquired by contract, and that any restriction upon the liberty of contract is in fact the taking of property without due process of law. If, therefore, this statute is not a restriction upon the liberty of contract, then this objection must fall. In either event, both constitutional objections urged against the validity of this law are determined by the same considerations, and further discussion of this objection is unnecessary.